## McQUILLAN *v.* ECKERSON.

1. BILLS AND NOTES—PRESUMPTION—CONSIDERATION—ESTATES OF DECEDENTS—CLAIMS.

   Where a claimant introduced in evidence a promissory note signed by decedent, as the testimony established, the presumption arose that it was signed on the date which it bore and was given for a valuable consideration; and the burden rested on the defendant to prove that there was no consideration or the note was executed on Sunday.

2. SAME—DIRECTED VERDICT.

   And it was error to direct a verdict for the defense, upon testimony that inferentially tended to show want of consideration or that the instrument was executed on Sunday: inferences from circumstantial evidence are for the jury.

3. SAME—NEGOTIABLE INSTRUMENTS—TRIAL—CHARGE.

   The trial court also erred in assuming as established that certain witnesses must have known about the facts and that the claimant should have produced them; his ruling invaded the province of the jury.

Error to Jackson; Parkinson, J.   Submitted November 20, 1913.   (Docket No. 111.)   Decided December 20, 1913.

Margaret McQuillan presented her claim against the estate of Nicholas McCann, deceased. On appeal to the circuit court, a verdict was directed for the defendant. Claimant brings error. Reversed.

*Price & Whiting,* for appellant.

*James J. Noon (Wilson & Cobb,* of counsel), for appellee.

STEERE, C. J. Claimant's father, Nicholas McCann, aged 84 years, died on his farm in Jackson county on October 17, 1910, leaving an estate which was probated in Jackson county; defendant being appointed administrator. Appellant filed a claim against the estate for the sum of $500, with interest from October 14, 1910, based upon a promissory note reading as follows:

"$500.                              October 14th, 1910.
"On demand after date I promise to pay to the order of Margaret E. McQuillan five hundred and 00/100 dollars, at ...... Value received with use.
"No.........
"Due on demand.
                              "NICHOLAS McCANN."

This claim was contested and an appeal taken from the action of the commissioners on claims to the circuit court, where, at the trial, in support of her claim, appellant introduced the testimony of two witnesses, her husband and daughter, to prove the signature of deceased to the note, introduced the same in evidence, and rested her case. On cross-examination of one of appellant's witnesses, the writing in the body of the note was identified as that of her son, an attorney residing in Ann Arbor.

On the part of the defense two witnesses, Margaret McCann, daughter-in-law of deceased, and Ethel McCann, his granddaughter, who resided with him on his farm at the time of his decease, testified under

objection: That on Sunday, the 16th day of October, 1910, claimant, who was residing in Jackson with her husband and had frequently visited her father during his last illness, came to his home to see him and while there was with him in his bedroom at different times. That on one of those occasions she came out of his room and asked Mrs. Margaret McCann, in the presence of her daughter, "for a pen and ink for Pa to sign a note." These were obtained from a customary depository and handed to her, whereupon she returned to deceased's room, closing the door. After being in his room in the neighborhood of ten minutes, she came out and handed the pen and ink back to Mrs. McCann. That deceased died in the afternoon of the next day.

The defense also, against objection, introduced testimony relative to deceased's business matters and financial circumstances, tending to show that he was out of debt and had been so for some three years previous to his death; that he owned a good farm, well equipped with stock and tools; that when he died he had in his possession a check for $140 recently received; and that the claims against his estate, except claimant's note, were a few small items of current expenses, totaling $133.26, being for labor, threshing, the use of some machinery, subscription to a paper, etc.

At the conclusion of the testimony both parties requested the court for a directed verdict. Defendant claimed that it appeared from the testimony the note in question was signed on Sunday; that there was no consideration for the same, and it was therefore void.

Appellant claimed that there was no legitimate testimony tending to show that the note was signed and delivered on Sunday; that even though signed on Sunday it would not be void if not also delivered to the payee on that day; that deceased's signature to it was undisputed and it was presumed to be signed on

the day it bore date; that it read, "For value received," was presumptively for a valid consideration; and that there was no competent evidence to overcome such presumption.

The court directed a verdict for defendant, holding it to be established by undisputed evidence that the note was executed on Sunday and was given without any valuable consideration.

The principal reasons impelling the court to these conclusions are disclosed by the following excerpts from the charge to the jury:

"The evidence shows it was drawn by a son of the claimant here and that he was a lawyer in Ann Arbor. There is no evidence he was in Jackson on the 14th, or that he or his mother went to Mr. McCann's on the 14th, or that Mr. McCann did any business on the 14th or on the 15th calling for the use of any paper or any pen or transacted any business whatever. * * * The evidence is undisputed in this case that on Sunday, the 16th, Mrs. McQuillan went to her father's, getting there about noon. After she had been there a short time and had talked a few moments with her father, she came out and asked Mrs. McCann, the daughter-in-law of decedent, for a pen and ink, saying that it was 'for Pa to sign a note.' * * * She went in there alone with her father, with the door shut, and after a time brought back the ink and pen and made no remark that father finally didn't sign it after all; they didn't need it; didn't sign it; nothing of the kind said and no evidence of it."

Commenting again on the fact that the note was drawn by claimant's son, the court said:

"If the young man was in Ann Arbor and drew the note on the day it bears date, which would be an equal presumption; yet, if drawn in Ann Arbor on the 14th, there was some question whether it could reach the old gentleman on the same day. There is no evidence anything reached him on that day, or that anybody asked him to do any business, or that he did any business or sought to do any business or talked of doing any business.

"So, gentlemen, I think that no other reasonable conclusion can be drawn from the evidence in this case than that this note was made on Sunday. It cannot be accounted for under the evidence in this case in any other way in my judgment. If it was not the thing that was done on Sunday, then it springs into being without any evidence in my judgment to account for it or explain it."

As to a want of consideration, the court said:

"The evidence is that this old gentleman had been out of debt for three years. He was sick. There is no evidence he was contemplating any investment or venture or building enterprise or anything of that kind requiring any money. There is evidence he had a check for over $100 in his possession at the time he died, which had been carried for a couple of weeks or thereabouts at least without getting it cashed. No evidence that he was wanting money. There is no proof that he ever had a business deal with his daughter, Mrs. McQuillan, or any transaction at any time of any kind in which anything valuable, money or other property, passed from her to him. There is no proof there was any antecedent debt for which the note was given. There is no proof she had $500 or any other sum of money at this time, or that she took and started from home with $500 in money.

"It is true the statute will prevent a party who presents a claim against the estate of a dead person to testify to anything which was equally within the knowledge of the deceased. * * * But, gentlemen, this is only as to those matters that are equally within the knowledge of the two. If Mrs. McQuillan had $500 before she went, that was not equally within the knowledge of Nicholas McCann and could have been proved. If she had $500 or more deposited in a bank, it could be proved. * * * If it related to some old deal that had taken place years before, even so long before that it was outlawed, the fact that she had some deal and arranged with him she was to have something valuable for it, I think it could be shown by somebody, the fact she had it; she could swear to it herself. The fact she had money in the bank she could swear to herself. * * * Therefore, I think under what is undisputed here, notwithstanding the

fact the note reads 'value received,' that the inference or conclusion is irresistible that there was not in fact any consideration. It was a mere promise to give. A promise to give is not worth anything. A gift consummated is. * * * But for a promise there must be a valuable consideration. A gift consummated is good. A promise to give is not worth anything. I think this note was a promise to give, without valuable consideration. * * * There certainly was not then any present consideration, and, if there had been a preceding consideration which anybody else on earth knew anything about, it could be proved. It isn't proved here. If there was such, the husband evidently didn't know of it and he didn't tell us anything about it. Under the circumstances and the fact her husband has been on the stand and is silent in that regard and everything as I have heretofore explained to you, I think the duty is imposed upon me of directing your verdict and directing your verdict in favor of the estate, and, so believing, that duty must be discharged."

It is to be borne in mind that when she rested claimant had proven her case and was, in the absence of anything further, entitled to a verdict in her favor as a matter of law. The proven note, produced by her and shown to have been signed by deceased, was presumed to have been given on the date it bore and for a valuable consideration. That presumption held good until overcome by competent counterproof. That burden was then on the defendant, and to prevail it was necessary for him to establish, by competent evidence, his claim that the note was not only signed on Sunday but delivered and accepted by claimant on that day, or that it was a naked gift without valuable consideration.

The evidence offered for that purpose was not in the nature of direct testimony, but circumstantial and inferential. This was within the realm of facts and inferences, the argument from a fact proven to a fact inferred, by presumptive evidence "afforded by cir-

cumstances, from which, if unexplained, the jury may or may not infer or presume other circumstances or facts." Black's Law Dictionary.

It was for the jury to exercise the processes of presumptive reasoning which the testimony authorized and decide the ultimate facts sought to be proven. In holding as a matter of law that the inferences deduced and stated in the charge were conclusive, the court invaded the province of the jury.

The court was also in error in assuming without proof that claimant's husband or others knew and could testify to material facts, if they existed, which she was by law precluded from testifying to because they were equally within the knowledge of the deceased, and that it was incumbent upon her to produce the evidence of other competent witnesses to such facts, failing in which all presumptions in favor of the validity of the note vanished. At most the court's deductions are inferences on inferences, inferring that the husband or others must have known certain facts if they existed and inferring either that they did not exist or were in defendant's favor because the inferred witnesses were not produced. Her failure to produce witnesses shown to know relevant facts or to testify as to material facts necessarily known to her and not precluded because within the knowledge of the deceased might be a legitimate matter for the jury to consider and give such weight as they deemed it entitled to, but the inferences were for the jury.

We cannot, however, sustain claimant's contention that a verdict should have been directed for her. We think there was competent testimony along the lines heretofore referred to bearing on the issue urged by defendant, and, without discussing the objections in detail, that its admission was not error. As presented by this record the case should have been submitted to

the jury, with proper instructions as to the issues raised and the rules by which they should be guided in passing upon the testimony and deciding the facts.

The judgment is reversed, and a new trial granted.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.